**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KENNETH D. LEEK,**

      **Plaintiff,**

      **v.**                             **CASE NO.  20-3051-SAC**

**LINDA J. SCOGGIN, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER**
**AND ORDER TO SHOW CAUSE**

Plaintiff Kenneth D. Leek, is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his Eighth Amendment claim should not be dismissed.  The Court is ordering a *Martinez* Report on Plaintiff's retaliation claim.

**I.  Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").  Plaintiff has paid the filing fee in full.

Plaintiff alleges that Defendant Linda J. Scoggin, an Aramark food supervisor working at HCF, fired him in retaliation for his complaints lodged against Scoggin.  Plaintiff alleges that after he complained, Scoggin labeled him a "snitch."

Plaintiff worked as a line server in the kitchen at HCF.  In October 2019, Plaintiff informed Lt. Dawes that Scoggin had a bad attitude towards the workers and was making rude comments.  Lt. Dawes radioed Lt. Koob, who joined them in the kitchen and agreed to talk to Scoggin.  Lt. Koob informed the line servers that Scoggin had been reprimanded and that a narrative would be written.  Lt. Koob further instructed the workers to return to their duties

because Scoggin had guaranteed there would be no further issues.

After the incident, Plaintiff returned to work after having his two scheduled days off. Plaintiff overheard Scoggin telling the security officer that Plaintiff had "went to the captain" and told on her and that she did not want Plaintiff in the kitchen. Plaintiff became irate and began to argue with Scoggin and the officer. The officer told Plaintiff to return to his living unit and Plaintiff complied. When Plaintiff returned to work the next day, numerous inmates told him that Scoggin had been informing the other kitchen workers that Plaintiff was a snitch—he had told on her and got her in trouble.

On November 12, 2019, Plaintiff reported to COI Dick that Scoggin was serving sausages that were not thoroughly cooked. Lt. Brown then arrived at the kitchen, and Plaintiff and another inmate informed him of the situation. Lt. Brown talked to Scoggin and told her the sausages were not edible and then informed Plaintiff and the other inmate that Lt. Brown had grown tired of complaints about Scoggin and was going to talk to the major about it. Scoggin then showed up and asked CO1 Dick to escort Plaintiff and the other inmate out of the kitchen because they were fired. Plaintiff never received a disciplinary report relating to his firing. The following day, Plaintiff was informed by Lt. Brown that Scoggin told Lt. Brown that Plaintiff was fired for complaining to the lieutenant about the food and she did not want him influencing others to do the same.

Plaintiff had to see mental health for his anger and paranoia on numerous occasions after the incident. Plaintiff was informed that he will have to be placed on medication if he cannot get his paranoia under control. Plaintiff has been stressed out and concerned about being assaulted as a result of being called a snitch.

On November 24, 2019, Plaintiff sent Defendant Lamb, the job coordinator, an offender

request to staff member form (Form 9) asking to be placed back in the kitchen, or assigned to the laundry or HVAC shop.  Plaintiff sent another request on November 25, stating that he was unlawfully terminated and that he wanted his job back or to be assigned somewhere else immediately.  Lamb responded to both requests with "request noted."  A few days later, Plaintiff saw Lamb in the rotunda talking to Lt. Brown.  Plaintiff approached Lamb and asked why he was not being assigned a job.  Lamb looked at Plaintiff's prison ID card and said, "Leek?  Oh, you won't be getting a job now or anytime soon."

Plaintiff alleges in his Complaint that his termination from his prison job was retaliatory in violation of the First Amendment.  Plaintiff also alleges that he was labeled a "snitch" in violation of the Eighth Amendments' prohibition of cruel and unusual punishment.  Plaintiff seeks injunctive relief, declaratory relief and monetary damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Eighth Amendment

Plaintiff alleges that he was subjected to cruel and unusual punishment by being labeled a snitch. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth

Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation. Scoggin told other inmates that Plaintiff reported her to her superiors. Plaintiff has not alleged that he suffered any repercussions based on this conversation. Plaintiff's Complaint does not allege specific facts indicating that the defendant official engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. Plaintiff should show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim.

### B. Retaliation

Plaintiff alleges that Defendants retaliated against him for reporting Scoggins to her superiors, by terminating him from his prison employment and refusing to assign him to another

job.  "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court finds that the proper processing of Plaintiff's retaliation claim cannot be achieved without additional information from appropriate officials of HCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of HCF to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claim under 28 U.S.C. § 1915.

### C.  Motion for Extension of Time

Plaintiff has filed a motion (Doc. 7) seeking an extension of time to serve the Defendants. Because the Court is ordering service on Defendants, Plaintiff's motion is moot and therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Extension of Time to Serve Defendants (Doc. 7) is **moot** and therefore **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 12, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Eighth Amendment claim should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that**:**

(1)     The Clerk of Court shall serve Defendant Michael J. Lamb under the e-service pilot program in effect with the Kansas Department of Corrections ("KDOC").  The Clerk shall send a waiver of service to Defendant Linda J. Scoggin.

(2)     Upon the electronic filing of the Waiver of Service Executed pursuant to the e-service program, KDOC shall have **sixty (60) days** to prepare the *Martinez* Report.  Upon the filing of that report, the AG/Defendants shall have an additional **sixty (60) days** to answer or otherwise respond to the Complaint.

(3)     Officials responsible for the operation of HCF are directed to undertake a review of the subject matter of the Complaint:

      a.     To ascertain the facts and circumstances;

      b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

      c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations,

official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the officials of HCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated May 13, 2020, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**
