Kenneth D. Leek #63533
Name

H.C.F. 500 Reformatory Rd.

Hutchinson, KS 67504-1568
Address

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Kenneth D. Leek , Plaintiff
*(Full Name)*

V.

Linda J. Scoggin , Defendant (s)

CASE NO. 20-3051-SAC
*(To be supplied by the Clerk)*

FIRST AMENDED
CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.
§1983

## A. JURISDICTION

1) Kenneth D. Leek , is a citizen of Kansas
   *(Plaintiff)*                                          *(State)*

   who presently resides at 500 Reformatory Rd. Hutchinson,
                                          *(Mailing address or place*
   KS 67504-1568 .
   *of confinement.)*

2) Defendant Linda J. Scoggin is a citizen of
             *(Name of first defendant)*

   Hutchinson, KS , and is employed as
   *(City, State)*

   a food service supervisor at H.C.F. . At the time the
   *(Position and title, if any)*

   claim(s) alleged in this complaint arose, was this defendant acting under the color of state

   law? Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

   She is under contract with the KDOC to

   provide food service to its prisoners

1

XE-2 8/82            CIVIL RIGHTS COMPLAINT §1983

3) Defendant _____ J. LAMB _____ is a citizen of
                        *(Name of second defendant)*

___ Hutchinson, KS _____, and is employed as
              *(City, state)*

a unit team and inmate job coordinator. At the time the
        *(Position and title, if any)*

claim (s) alleged in this complaint arose was this defendant acting under the color of state

law? Yes ☒ No ☐ . If your answer is "Yes", briefly explain:

He is employed by the Kansas Department of Corrections
to provide counseling and other services to prisoners.

(Use the back of this page to furnish the above information for additional defendants.)

(see attached documentation for additional defendants)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to

assert jurisdiction under different or additional statutes, you may list them below.)

___ 42 USC 1331.(d) _____

___

## B.  NATURE OF THE CASE

1) Briefly state the background of your case:

___

___

___ See attached document pages 8 - 92 _____

___

___

___

___

___

XE-2 8/82            CIVIL RIGHTS COMPLAINT §1983

2

## C.  CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been

   violated and that the following facts form the basis for my allegations: (If necessary you

   may attach up to two additional pages (8h" x 11") to explain any allegation or to list

   additional supporting facts.)

   A) (1) Count I: _See attached document para. 93_

   (2) Supporting Facts: (Include all facts you consider important, including names of

   persons involved, places and dates. Describe exactly how each defendant is involved.

   State the facts clearly in your own words without citing legal authority or argument.):

   _See attached document para. 8 - 92_

   B) (1) Count II: _See attached document para. 94_

   (2) Supporting Facts: _See attached document para. 8-92._

XE-2 8/82          CIVIL RIGHTS COMPLAINT §1983

C) (1) Count III: _See attached document para. 95_

(2) Supporting Facts: _See attached document para. 8-92_

## D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☐ No ☒ . If your answer if "Yes", describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    a)  Parties to previous lawsuit:

        Plaintiffs: _N/A_

        Defendants: _____

    b)  Name of court and docket number  _N/A_

    c)  Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)  _N/A_

    d)  Issues raised  _N/A_

        CIVIL RIGHTS COMPLAINT §1983

e) Approximate date of filing lawsuit _____ *N/A* _____

f) Approximate date of disposition _____ *N/A* _____

1) I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes ☒ No ☐. If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

_Plaintiff filed an administrative grievance_
_and went through the entire appeal process. He_
_received no relief at any level._

## 2) REQUEST FOR RELIEF

1) I believe that I am entitled to the following relief:

_See attached document in_
_"Relief Requested" section_

_____          _Kenneth D. Zeek_
Signature of Attorney (if any)                    Signature of Plaintiff

_____

_____

_____
(Attorney's full address and telephone number)

XE-2 8/82                    CIVIL RIGHTS COMPLAINT §1983

Mr. Kenneth D. Leek #63523
H.C.F.  500 Reformatory Rd.
Hutchinson, KS  67504-1568

## IN THE UNITTED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH D. LEEK,  )<br>     Plaintiff,       )<br>                        )<br>VS.                     )<br>                        )<br>LINDA J.SCOGGIN,        )<br>MICHAEL J. LAMB,        )<br>ROBBIN L. HURT,  and    )<br>DEBRA A. SKALINDER,     )<br>sued in their individual capacities  )<br>     Defendants        )<br>———————————————  ) | **FIRST AMENDED COMPLAINT**<br>JURY TRIAL DEMANDED<br><br><br>Case No. <u>5:20-CV-0351-SAC</u> |

Preliminary Statement

     This is a civil rights action filed by Kenneth D. Leek, a state prisoner, for damages and injunctive relief under 42 U.S.C. §1983, alleging retaliation for being terminated from his prison job in violation of the First Amendment to the United States Constitution and being called a snitch by a state employee in violation of the Eighth Amendment to the United States Consitution.

*Jurisdiciton*

1. The court has jurisdiction over plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §1331(a) and 1343.

*Parties*

2.  The plaintiff, Kenneth D. Leek, was incarcerated at Hutchinson Correcional Facility ("HCF") during the events described in this complaint.

3.  Defendant Linda J. Scoggin is a food service supervisor employed by Aramark and working at HCF.  She is sued in her individual capacity.

4.  Defendant Michael J. Lamb is a unit team and inmate job coordinator at HCF.  He is sued in his individual capacity.

5.  Defendant Robbin L. Hurt is a unit team counselor at HCF.  She is sued in her individual capacity.

6. Defendant Debra A. Skalinder is a food service supervisor employed by Aramark and working at HCF.  She is sued in her individual capacity.

7. All defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

*Facts*

8. At the time the allegations made in this complaint took place plaintiff was employed as a line server in the kitchen at H.C.F.

9. On Saturday morning in October, 2019 plaintiff heard defendant Scoggin tell his supervisor, "if you can't get your workers to work quietly and faster, I'll fire all of them."

10. Most of the  workers on the serving line were African-American and were discussing prison issues that affected them.

11. Most of the inmates present heard Scoggin's comments and immediately took offense and started verbally complaining about her consistent offensive comments.

12. Plaintiff and the rest of the line workers took their break between feeding segregation inmates and population inmates shortly after the incident.

13. When Lt. Dawes came to the the kitchen to advise the workers he was about to send general population inmates to breakfast he noticed the line workers looked upset so he asked, "what's going on guys?"

14. Plaintiff informed Dawes about Scoggin's consistent bad attitude and rude comments and that the workers were refusing to serve and food unless someone in authority spoke to Ms. Scoggin.

15. Dawes subsequently radioed Lt. Koob and he immediately came to the kitchen.

16. After speaking with plaintiff, Dawes, and some other inmates, Koob agreed to speak to Ms. Scoggin.

17. After speaking with Scoggin Lt. Koob informed the line servers that Scoggin had been reprimanded and a narritive would be written.  He further requested the workers to go ahead and serve breakfast since Scoggin guaranteed there would be no more issues.  The crew agreed.

*Eighth Amendment Violation*

18. After the incident plaintiff had two scheduled days off.  When he returned to work Tuesday morning he overheard Scoggin tell the security officer she did not want plaintiff in the kitchen because he "went to the captain and told" on her.

19. Plaintiff became irate and began to argue with Scoggin and the officer.  The officer instructed plaintiff to return to his living unit as he was instructed before he made matters worse.  Plaintiff had no choice but to comply.

20. On the way back to the living unit plaintiff saw Lt. Koob and told him what had transpired.  He instructed plaintiff to take the day off but return to work the following day as he would talk to the kitchen officer.

21.  When plaintiff returned to work he had numerous inmates tell him that Scoggin had been informing other kitchen workers that he was a snitch, that he had told on her and got her in trouble.

22.  Plaintiff spoke to Scoggin's boss, Michael Buch, about Scoggin laying him in from work and calling him a snitch but he brushed plaintiff off and told him to get back to work.

23.  Scoggin has been employed at HCF well over 10 years and is fully aware of what can happen when an inmate is labeled as a snitch.

24.  On Novemebr 12, 2019 breakfast burritos were being served at breakfast.  After serving the general population inmates plaintiff told Aramark Supervisor Mr. Smith that there was not enough rice or scrambled eggs left to feed the 50 kitchen workers.

25.  Scoggin decided she would serve the kitchen workers two (2) sausages and a cup of cereal as substitutes for the rice and eggs.  She took it upon herself to cook the sausages.

26.  Later plaintiff saw Scoggin pulling a bag of sausages out of hot water and heard an inmate cook say, "those are not done yet.  Look at them!"  Scoggin replied, "I don't care, they're getting served."  She then put the half-cooked sausages in a 6 inch pan and took the food to the serving line.

27.  Plaintiff noticed Scoggin was attempting to separate uncooked sausages from paritially cooked ones.  Other inmates too noticed and began to refuse the food trays.

28.  Plaintiff went to the security officer, COI Dick, and told him what was going on with the food.  He told Dick he wished to follow protocol and speak with the captian or leutenant about the food.

29.  A short while later Lt. Brown showed up in the kitchen.  Plaintiff and inmate Stephen Carter spoke to him and informed him of what had taken place in regard to the food.

30.  Lt. Brown advised plaintiff he would have to see the food himself before he could decide how to proceed.  He then went to the serving line where Scoggin was.

31.  Plaintiff could clearly hear Brown tell Scoggin, "these sausages are not edible; you cannot serve these.  You need to serve these guys some food that you would want to eat."

32.  When Brown returned to where plaintiff and Carter were standing he informed them that the food was not fit to eat, that more was being prepared, and to be patient. He further advised that he had grown tired of complaints about Scoggin and the food and that he would talk to the major about it.

33.  Plaintiff and Carter advised Brown they were concerned about Scoggin retaliating against them for speaking to him.  Brown instructed them not to worry about it.

34.  While sitting at the table eating plaintiff asked officer Dick if he could leave early so

he could try to see mental health because he was feeling agitaed and anxious.  He said he would call the mental health department and see if it could be arranged.

*Retaliation*

35.  Before officer Dick could leave Scoggin showed up and instructed him to escort plaintiff and inmate Carter out of the kitchen once they were finished eating, they were fired.

36.  Plaintiff asked Scoggin why he was fired and she did not answer, merely shot him a nasty look and walked off.

37. Officer Dick apologized for Scoggin's behavior but instructed plaintiff and Carter to leave the kitchen.  They followed his order.

38.  It is established policy and practice at HCF that an inmate request to speak to a captain or leutenant about any problem he has with his food if Aramark employees refuse to help.

39.  On the way back to his living unit plaintiff saw Lt. Brown and spoke to him about what had taken place.  He advised hm he had already received a call from Scoggin and was aware of the situation.

40.  Pursuant to prison policy and practice kitchen workers must receive a disciplinary report to be terminated from employment.  Plaintiff never received a disciplinary report.

41.  Plaintiff explained to Lt. Brown it was unlawful for Scoggin to fire him for speaking to prison staff about the food.  Brown refused to intervene.

42.  The following day plaintiff was advised Lt. Brown was told by Scoggin he was fired for complaining to the leutenant about the food and she did not want him or Carter influencing others to do the same.

43.  Since plaintiff has been terminated multiple kitchen workers have told him everyone is afraid to complain about anything.

44.  Since plaintiff is now unemployed he has no source of income.

*Mental Anguish*

45.  Since plaintiff's run ins with Scoggins he has had to be seen by mental health on numerous occasions about his anger and paranoia.

46.  Corizon medical staff advised plaintiff if he can't get his paranoia under control he would have to go on medication.

47.  Plaintiff has been stressed out and concerned about being assaulted as a result of Scoggin calling him a snitch.

*Failure to Correct Constitutional Wrongs*

48.  On November 24, 2019 plaintiff sent defenant Lamb, the job coordinator, an offender request to staff member form ("Form-9") advising him that he had some mental health issues and was struggling with all the time he was spending in his cell. He asked to be placed back in the kitchen, assigned to the laundry, or HVAC shop.

49. On November 26, 2019 Lamb responded simply, "request noted."

50. On November 26, 2019 plaintiff sent Lamb another Form-9 advising him that he had been improperly removed from his job in the kitchen because he requested to speak to the leutenant about the quality of food he was being served, that such termination was unlawful, and that he wanted his job back or to be assigned somewhere else immediately.

51. On December 4, 2019 Lamb again responded simply, "request noted."

52. Afew days later plaintiff saw Lamb in the rotunda of the prison talking to none other that Lt. Brown. Plaintiff approached Lamb and asked why he was not being assigned a job. Lamb looked at plaintiff's prison ID and said, "Leek? Oh, you wont be getting a job now or anytime soon." Then he turned his back on plaintiff and continued to talk to Lt. Brown. Plaintiff walked away.

53. Prison regulations require an inmate to seek informal resolution with his Unit Team Counselor prior to the filing of any administrative grievance.

54. Plaintiff's Unit Team Counselor at the time of the incident was defendant Robbin L. Hurt.

55. Plaintiff spoke with Hurt on numerous occasions about what had transpired in the kitchen in hopes that she would take steps to get him reassigned to his job.

56. Hurt made it clear that she had no interest in helping plaintiff and even believed that Scoggin had did nothing wrong by firing him for complaining to the leutenant about the food.

57. On January 7, 2020 plaintiff sent Hurt a Form-9 stating he has his job taken because he complained about the food to the captian, that he never received a disciplinary report, that Lamb refused to reassign him there or anywhere else, that those actions were illegal, and what was he supposed to do.

58. The following day Hurt responded to the Form-9. She asked plaintiff, "what actions are illegal?" She also asked plaintiff to give her his "source" that told him those actions were illegal so she could look into it. She also reccomended that plaintiff send form-9's to supervisors he would like to work for. Plaintiff did as he was requested.

59. No supervisor answered any of the Form-9's and he has no idea if they ever even receied them.

60. Plaintiff sent Hurt another Form-9 on January 8, 2020 stating the First Amendment and "about 1,000 state and federal cases" is his source of authority stating a prisoner cannot be fired for grieving a wrong in an appropriate manner. Plaintiff also told Hurt he had already contacted Lamb and explained the matter to him and he refused to offer any assistance.

61. On January 10, 2020 Hurt responded to the Form-9. She said, "just because you have the right to free speech does not mean you are free of the consequences of that

speech. Aramark is a private company and if they choose not to hire you that is within their right as an employee."

62. Hurt's response shows her deliberate indifference to plaintiff's issues and rights.

63. As a Unit Team Hurt had a duty and authority to assist plaintiff in being reassigned to the kitchen or at a minimum somewhere else in the facility.

64. On November 13, 2019 plaintiff filed an administrative grievance in regard to that complained of here.

*Second Wrongful Termination*

65. After a few months went by defendant Lamb went on vacation.

66. Immediately following his leaving his substitute at the job coordinator position had plaintiff scheduled for food service clearance so he could be hired back in the kitchen.

67. Upon cause and belief plaintiff believes Lamb was was the sole reason he could never be assigned a job.

68. Plaintiff's fisrt day back in the kitchen was Saturday January 25, 2020 on the 2-10 shift. He worked his shift without incident.

69. When plaintiff went back to work Scoggin was not present as it was her day off.

70. The next day plaintiff showed up for work and the instant Scoggin saw him she gave him a direct order to leave the kitchen before he could even clock in. She shouted, "I don't know how you got back in here but we are not going to do this. I wont be in here with you."

71. Plaintiff told her he had went through the grievance process and even though he was denied he still ended up back in the kitchen. She replied, "I don't care. You need to leave now."

72. Since plainitff would have ended up in segregation if he did not follow her order he reluctantly left the kitchen.

73. The next morning security personnel woke plaintiff up at 1:30 a.m. and told him he was to report to work.

74. When plaintiff left the living unit he saw Lt. Dawes and spoke to him about what had transpired in the kitchen the day before and asked him what he should do about the situation.

75. Lt. Dawes told plaintiff to report to work because he was on the schedule and if Scoggin had a problem with it that she should call him.

76. Plaintiff went to work and as soon as he walked in Scoggin again lost her cool. She instructed plaintiff to leave the kitchen again. Plaintiff told her that he had spoken with the leutenant about her and he said if she had a problem with him being there to take it up with him.

77. Scoggin immediately jumped up from her desk, gave plaintiff an order to follow her, and began to walk toward the exit. Plaintiff followed her.

78. Scoggin went to the captain's office and spoke personally with Lt. Dawes out of the presence of plaintiff. When she returned to the hallway where plaintiff was waiting she informed plaintiff to go back to his living unit for the time being and the Aramark staff would figure out what to do about the situation.

79. The next day plaintiff's cell door came open at about 9:45 a.m. When plaintiff asked what was going on he was told to report to work. Plaintiff had apparently had his shift changed without his knowledge but he went to work nonetheless.

80. Soon as plaintiff got to work he went in the office to speak with defendant Skalinder because she did all the scheduling for the inmates. He asked Skalinder why he was suddenly being moved to second shift when he had specified when he was hired that he needed to work first shift due to his personal schedule and the fact that was the shift he was improperly terminated from.

81. Skalinder stated she didn't have the authority to place him on first shift because Scoggin didn't want him there and if he was going to be able to move back to that shift he would have to speak to the head supervisor Mr. Pantalono.

82. Plaintiff informed her he would do exacly that, excused himself, and went to work.

83. A few hours later plainitff left work to attend the law library because it was already scheduled prior to his being hired back in the kitchen.

84. If a prisoner is scheduled to attend law library and he fails to show up it affects his being able to be scheduled in the future.

85. On January 20, 2020 plaintiff went to work and went straight to Mr. Pantalono's office. While a conversation was going on about Scoggin's behavior and what it would take for plaintiff to be moved back to first shift Skalinder walked into the office. The conversation went on in her presence and she listened in. She eventually placed some documents on Pantalono's desk, asked him to look them over, shot him a nasty look, and exited the office.

86. Mr. Pantalono informed plaintiff he had received a lot of complaints about Scoggin and he had already planned on talking to her. He said plaintiff not being able to work on first shift made no sense and he would see if he could work it out with Scoggin.

87. Plaintiff thanked Pantalono and went back to work.

88. About ten minutes after leaving Pantalono's office two security staff approached plaintiff and officer Swan told him, "Ms. Skalinder instructed me to escort you out of the kitchen, your services are no longer required because you're fired."

89. Plaintiff started laughing and continued to work thinking there was no way he was serious. Swan the said, "for real, man, you have to go." When plaintiff asked why he was fired Swan said, "you're not going back to first shift and your callouts conflict with you being here."

90. Plaintiff argued that he could not be fired for going to the law library or talking to

the supervisor about Scoggin and he was given a direct order to either leave or go to segregation.  Plaintiff had no choice but to leave.

91.   On February 5, 2020 plaintiff filed an administrative grievance in regard to Scoggin's actions and being fired again.

92.  Plaintiff has fully exhausted his administrative remedies as to all his claims.

*Claims For Relief*

93.  The actions of defendant Scoggin in laying in and terminating plaintiff from his job on multiple occasions in retaliation for his complaints to prison officials about her were in violation of the Petition and Free Speech Clauses of the First Amendment to the United States Constitution.

94.   The actions of defendant Scoggin in calling plaintiff a snitch to other inmates, despite her knowledge of what could happen, constituted deliberate indifference to the plaintiff's safety and caused him mental anguish in violation of the Eighth Amendment to the United States Constitution.

95.  The actions of defendant Lamb in refusing to reassign plaintiff to his job or assign him to a different job, after being appraised of the actions of defendant Scoggin, contributed to and proximately caused the above-described violation of the First Amendment.

96.  The actions of defendant Hurt in refusing to assist plaintiff in being reassigned to his job or being assigned to a different job, after being appraised of the actions of defendant Scoggin, contributed to and proximately caused the above-described violation of the First Amendment.

97.  The actions of defendant Skalinder in terminating plaintiff from his job for complaining to the head supervisor about the actions of Scoggin and for going to the law library were in violation of the Petition and Free Speech Clauses of First Amendment and the Sixth Amendment to the United States Constitution.

*Relief Requested*

WHEREFORE, plaintiff requests that the court grant the following relief:

A.  Issue a declaratory judgment stating that:

1.   The actions of defendant Scoggin in laying in and terminating plaintiff on numerous occasions violated his rights under the First Amendment to the United States Constitution.

2.  The actions of defendant Scoggin in calling plaintiff a snitch to other inmates violated the plaintiff's rights under the Eighth Amendment to the United States Constitution.

3.  The actions of defenant Lamb in refusing to reassign plaintiff to his job or to another job violated plaintiff's rights under the First Amendment to the United States Constitution.

4. The actions of defenant Hurt in refusing to assist plaintiff in being reassigned to his job or to another job violated plaintiff's rights under the First Amendment to the United States Constitution.

5. The actions of defendant Skalinder in terminating plaintiff from his job for complaining to the head supervisor about the actions of Scoggin and for going to the law library were in violation of the Petition and Free Speech Clauses of First Amendment and the Sixth Amendment to the United States Constitution.

B. Issue an injunction ordering defendant Lamb to:

1. Immediately assign plaintiff to job.

C. Award compensatory damages in the following amounts:

1. $1.00 per day jointly and severally against defendants Scoggin, Lamb, and Skalinder for the income lost as a result of plaintiff's termination form employment.

2. $10,000.00 agaisnt defendant Scoggin for the emotional injury resulting from her calling plaintiff a snitch to other inmates.

D. Award punative damages in the following amounts:

1. $10,000.00 agaisnt defendant Scoggin.

2. $5,000.00 against defendant Lamb.

3. $5,000.00 against defendant Hurt.

4. $5,000.00 against defendant Skalinder.

E. Award actual damages jointly and severally against defenants Scoggin, Lamb, Hurt and Skaliner for the costs associated with this suit.

F. Grant nominal damages individually in the amount of $1.00 agaisnt defendants Scoggin, Lamb, Hurt and Skalinder.

G. Grant such other relief as it may appear that the plaintiff is entitled.

Date:                                                     Respectfully,

                                                          _Kenneth O. Leek_

                                                          KENNETH D. LEEK

## DECLARATION

Pursuant to 28 USC §1746, I declare under the penaly of perjury that the foregoing is true and correct.

                                                          _Kenneth D. Leek_

                                                          KENNETH D. LEEK