Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KENNETH D. LEEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-3051-SAC |
| | ) | |
| LINDA J. SCOGGIN and MICHAEL J. | ) | |
| LAMB | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPORT IN "MARTINEZ v. AARON" INVESTIGATION

## CIVIL RIGHTS COMPLAINT

On February 14, 2020, plaintiff Kenneth D. Leek filed a civil rights action pursuant to 42 USC §1983 in the United States District Court for the District of Kansas. (Doc. 4)  At all relevant times plaintiff, Kenneth D. Leek, was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas.  On May 13, 2020, the Court issued an order directing the preparation of a Martinez Report regarding plaintiff's claim that he was fired from his job in retaliation for exercising his First Amendment right of free speech.  The same order issued a show cause order why plaintiff's 8th amendment claim should not be dismissed (Doc. 8)

1

## SUMMARY OF ALLEGATIONS IN PLAINTIFF'S PETITION

Plaintiff is an inmate housed at the Hutchinson Correctional Facility at the time his cause of action arose on November 13, 2020. (Doc. 4 p.6)

Plaintiff alleges he was fired from his food service job assignment on November 13. 2019, because he exercised his First Amendment right to complain about food he and other inmates were being served to consume. (Doc. 4 p. 9-10)

Plaintiff complains that defendant Aramark supervisor Scoggin was responsible for plaintiff being removed from his job assignment and fired him in retaliation for plaintiff complaining about the food. (Doc 4 pp. 9-10)

Plaintiff complains that after being removed from the Aramark assignment that he was not immediately assigned a new job by defendant Lamb.  This failure of defendant Lamb to reassign plaintiff to a job contributed to and proximately caused the First Amendment violation. (Doc.4 pp. 10-11)

Plaintiff seeks various relief.  He seeks a declaratory judgment that the actions of defendant Scoggins and the inaction of defendant Lamb violated his First Amendment rights.  He also seeks an injunction directing defendant Lamb to assign him a job.  Plaintiff further seeks $200 jointly and severally from both defendants for lost wages.  Plaintiff also seeks punitive damages from defendant Scoggins for $10,000 and from defendant Lamb for $5,000.  And plaintiff seeks his costs. (Doc. 4 p.12)

## UNCONTROVERTED STATEMENT OF FACTS

**I.      PLAINTIFF POST FILING INFORMATION**

Plaintiff, Kenneth D. Leek, is an inmate legally incarcerated in the custody of the Secretary of Corrections, State of Kansas.  Plaintiff has been in the custody of the Kansas Secretary of Corrections since August 8, 1996, following his conviction of one count of first degree murder. (See Kasper Sheet Exhibit 1)

Plaintiff was sent a letter on July 1, 2020, asking him if he had anything to add to this report.  (Exhibit 2)

Plaintiff and counsel conferred about the report and about a possible extension request. Plaintiff had nothing to add to his existing petition and had no objection to an extension being requested.  Plaintiff did so state in a letter dated June 2, 2020, but received by counsel on July 6, 2020, and added that he might file an amended petition. (Exhibit 3)

**II.     EVENTS OCCURRING IN THE KITCHEN AREA AT  THE CENTRAL UNIT OF THE HUTCHINSON CORRECTIONAL FACILITY IN OCTOBER OF 2019**

Sometime in October of 2019 Lt. Markus Dawes walked into the food service area and observed that all the inmates assigned to food service were sitting down and not working.  He further noticed they appeared to be upset with something.

The inmates indicated that defendant Linda Scoggin had offended the crew with her critical language and that they were not going to work until someone above her in authority spoke to her about the matter.  Lt. Dawes then called Captain Todd Koob to come to the kitchen area.

When Captain Koob arrived he spoke with defendant Scoggin about her treatment of the inmate crew.

Captain Koob reported to the inmates that he had spoken to defendant Scoggin about the matter and asked the inmates to please return to work.  The inmates began working again. (Exhibits 4 &5)

### III.     EVENTS OCCURRING IN THE KITCHEN AREA AT THE CENTRAL UNIT OF THE HUTCHINSON CORRECTIONAL FACILITY ON NOVEMBER 12, 2019

On November 12, 2019, between 7:00 and 7:30 a.m. Correctional Officer Scott Dick was working in the food service area at the central unit of the Hutchinson Correctional Facility.  The inmate crew assigned to prepare and serve breakfast to the inmates had completed their work and were waiting to be served their own breakfast.  Defendant Scoggin chose to serve the inmates herself.

Plaintiff Kenneth Leek and another inmate approached officer Dick and told him that defendant Scoggin was attempting to serve the inmates food that was still cold and that it needed to be warmed up before serving.  The inmate crew wanted to be fed a consumable meal before returning to work.  The issue was that the sausages to be served to the inmates were cold and needed to be heated, but defendant Scoggin refused to do so.

Officer Dick called Lt. Nathan Brown to come to the food service area to address the issue.  Officer Dick remained with the inmate while Lt. Brown and defendant Scoggin went to her supervisor, Michael Buch.

When Lt. Brown first entered the food service area, he saw the entire inmate crew sitting.

The inmates all arose at once and approached Lt. Brown with their grievance.  Plaintiff and one other inmate became the spokespersons for the group.  They indicated that the breakfast sausages were  cold and defendant Scoggin was serving them to the inmates anyway.

Lt. Brown examined the sausages on the serving line with defendant Scoggin present.  Lt. Brown determined that the sausages didn't look or smell right and were as cold as when they were refrigerated.  Lt. Brown told defendant Scoggin that the sausages were not edible in their present condition and could not be served to inmates.  Lt. Brown further advised defendant Scoggin that she needed to be sure she would eat the food she was serving to inmates.  Lt. Brown had recited that concept to defendant Scoggin more than once before.  The sausages were placed in the deep fryer for a short time and they became edible.  Lt. Brown believed that the sausages were precooked, but still needed to be warmed before consumption.

While the sausages were warming Lt. Brown told the inmates that he agreed the food wasn't suitable to be consumed as it was and confirmed that the food was being prepared at that time.  When the sausages came out after being warmed, officer Dick ate one in front of the inmates and told them the food was okay to consume.  The inmate crew was satisfied, consumed their meal and returned to work.

After the sausages were brought out, plaintiff and the other inmate who acted as spokespersons approached Lt. Brown and expressed concern that defendant Scoggin would retaliated against them for complaining about the sausages.  Lt. Brown told them to not worry about it and left the kitchen area.

After defendant Scoggin finished serving the meal she approached officer Dick and told him that, after they had finished eating, he should escort plaintiff and the other inmate from the kitchen because they were fired from their jobs.

Officer Dick did as he was told and told plaintiff and the other inmate to leave the kitchen area.  He also apologized to them for the way defendant Scoggin acted.  Plaintiff and the other inmate did as instructed.

At that time, Lt. Brown was called to the rotunda area, where he was approached by plaintiff and told that plaintiff and the other inmate who spoke for the group were fired from their jobs because they complained about the sausages.  Lt. Brown said he would look into it.  Lt. Brown also told plaintiff he could grieve the matter if he wished to do so.

Lt. Brown returned to the kitchen area and escorted defendant Scoggin to her supervisor, Mr. Buch.  Lt. Brown opined that defendant and the other inmate should not have been fired for complaining about the sausages.  Lt. Brown also commented that he didn't see how they would run an inmate crew after those two inmates were fired.  Lt. Brown stated that the action looked like retaliation and that it was both politically and ethically wrong to do so.

Lt. Brown advised in his affidavit that in corrections, inmates are trained to work through difficulties rather than acting out in anger and defendant Scoggin's actions advanced a different message.

Lt. Brown has known defendant Scoggin for a number of years and has periodic discussions with her, in front of her supervisor, about her interactions with inmates and officers, and also about her conflict directed attitude.  When this type of discussion is to  be had, Lt. Brown takes defendant Scoggin to her supervisor, since Lt. Brown is not in the chain of command for defendant Scoggin, who is an employee of food service contractor Aramark.  Lt. Brown then spoke to the supervisor, with defendant Scoggin, with the hope that the supervisor would address the matter with defendant Scoggin after Lt. Brown left.

In preparing his affidavit, Lt. Brown was advised of the existence of an email that was attached to defendant Michael Lamb's affidavit and identified as "Exhibit 8.D". That email from Aramark assistant director Debra recited that due to information from Lt. Brown and director Buch that plaintiff and the other inmate who spoke up needed to be removed from their jobs because they were causing issues that could lead to a riot.

Lt. Brown denies ever making such a statement. He further indicates that the inmates in the kitchen on November 12, 2019, were not being incited to engage in a riot or other destructive behavior. Lt. Brown further indicates that he never made such a statement and was not aware of the existence of that email until his affidavit was being prepared and he was asked about it. (Exhibits 6 & 7)

## IV.    STATEMENT OF DEFENDANT MICHAEL LAMB

Plaintiff complains that defendant Unit Team Supervisor Michael Lamb violated his first amendment rights in not finding plaintiff another job assignment as quickly as plaintiff wished.

One of defendant Lamb's jobs was to manage work assignments for all the inmates in the central unit of the Hutchinson Correctional Facility.

Prior to November 12, 2019, plaintiff's recent job history was that he worked for a private industry employer Electrex at the east unit of the Hutchinson Correctional Facility from February 9, 2019, until July 23, 2019. Plaintiff lost that position after he was convicted of five disciplinary violations between July 19, 2019, and July 26, 2019, when plaintiff was transferred to the central unit of the Hutchinson Correctional Facility. Defendant Lamb then became responsible for finding plaintiff a job.

After plaintiff served his disciplinary segregation and restriction sentences he was in

Layin Cause status until October 10, 2019, when he was placed in a job with Aramark food service.  Plaintiff remained so employed until November 1, 2019, when he was placed in prehearing detention due to a new disciplinary charge.  The charge was dismissed November 5, 2019, and plaintiff was removed from Layin Cause status on November 9, 2019, and was returned to the Aramark position.  Plaintiff received $1.05 per day inmate pay for that position.

After receiving the email on November 12, 2019, that plaintiff needed to be removed from his position because plaintiff was causing issues that could lead to a riot, plaintiff was removed from that position with Aramark, but was not written a disciplinary report.  He was then placed on Layin Unassigned, which still permits him to receive $.45 a day pay.  If he had been convicted of a disciplinary violation he would have been placed on Layin Cause status and would have received no pay until reemployed.  Defendant Lamb didn't know why plaintiff did not receive a disciplinary report.

Defendant Lamb was to try and find plaintiff another job within 30 days, which did not happen.

Defendant Lamb did not refuse to assign plaintiff another job.  Food service jobs were the most available positions, but plaintiff could not go back there.  There were not as many jobs as inmates and unemployed inmates needed to wait for positions to open up.

Plaintiff twice wrote defendant Lamb in late November and early December of 2019 asking for work and plaintiff responded "Request Noted", which was his usual response when he had nothing new to tell the inmate.  Plaintiff was also welcome to speak to his assigned unit team counselor if he had something else that required attention.

Plaintiff also indicated that he approached defendant Lamb in the rotunda area a few days

after sending the second Form 9 communication and that defendant Lamb looked at his inmate identification and told plaintiff that he wouldn't be getting a job any time soon. Defendant Lamb doesn't remember that conversation and indicates that his normal response would be to tell the inquiring inmate to send him a Form 9.

Plaintiff was again assigned to food service on January 25, 2020, while defendant Lamb was on leave. Plaintiff was again removed at the request of Assistant Director Debra Skalinder on January 29, 2020, when she also asked that plaintiff be placed on the "Do Not Hire" list. Such a list does not exist, but defendant Lamb tried to honor Aramark's requests.

Plaintiff was returned to Lay-in Unassigned status until February 28, 2020, when he was assigned to the Electric Shop, where he remained until April 30, 2020. On that date contraband was found in the shop and the entire inmate crew was terminated.

Based on the November 12, 2020, email, plaintiff was removed from that job with Aramark at Aramark's request for Security reasons. Defendant Lamb denies removing plaintiff from his job because he was exercising his first amendment rights. Defendant Lamb also denies he refused to hire plaintiff to another position quickly because of plaintiff's actions on November 12, 2019. (Exhibit 8)

## V.      STATEMENT OF LINDA SCOGGIN

Linda Scoggin is a food service supervisor for Aramark at the Hutchinson Correctional Facility.

Linda Scoggin indicates there were a series of incidents between plaintiff and her.

She supervised inmates during the breakfast shift in the kitchen to prepare and serve food to inmates. The incidents complained of by plaintiff occurred after inmates were fed and it was

time for the servers to eat.

Linda Scoggin prepared sausages for the inmate servers as she always did, by heating the precooked sausages in boiling water until they reach an internal temperature of 160 to 165 degrees.  The sausages do not require being cooked in the oven or on the stove.

Plaintiff complained because the sausage he received was cold in the center, and it was. Linda Scoggin then reheated the sausage.

Plaintiff argued with Linda Scoggin about the cold sausage and then attempted to get other inmate staff involved in the argument and to say that they do not like her.  She characterized this conduct as plaintiff trying to start a riot.

After this incident, plaintiff complained to Linda Scoggin's supervisors and tried to be reassigned.  Aramark was not able to accommodate plaintiff's request because available hours conflicted with his time scheduled to attend law library.

Linda Scoggin does not remember saying that she wanted plaintiff off the line because he went to the captain and told on her.

Linda Scoggin never called an inmate a snitch or tell inmates that another inmate was a snitch or anything similar to that because she knows what happens when an inmate is called or labeled as a snitch or similar term. (Exhibit 9)

### VI.    STATEMENT OF DEBRA SKALINDER

Debra Skalinder was the assistant food service director for Aramark at all times relevant.

She became aware of an issue between plaintiff and defendant Linda Scoggins in late 2019.  Plaintiff worked in the kitchen as a server under defendant Scoggin's supervision.

In November of 2019, plaintiff Leek was upset because of a disagreement with defendant Scoggin involving cold breakfast sausages and plaintiff tried to get other inmates working in the kitchen to join in the complaint.  Plaintiff was very disruptive.  Defendant Scoggin described this conduct to Debra Skalinder as attempting to start a riot.

Debra Skalinder contacted plaintiff's unit team by email in November of 2019 requesting that plaintiff be removed administratively from his position because he was not able to work with defendant Scoggin and because plaintiff's actions caused issues in performing the tasks which needed to be accomplished.  Debra Skalinder did not think plaintiff had acted in a way that would require a disciplinary report to be written.

After the incident, plaintiff said he could not work with Ms. Scoggins.  Debra Skalinder tried to accommodate plaintiff's request to not work with defendant Scoggins by putting him on a different shift.  This did not work because it conflicted with the times plaintiff had scheduled to attend in the law library. (Exhibit 10)

## VII.   AFFIDAVITS INVOLVING RECORDS FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES

Christiana Wise is keeper of the records of property and personal injury claims filed at the Hutchinson Correctional Facility and indicates she found no such records for the time frame surrounding plaintiff's claims. (Exhibit 11)

Elizabeth Smith is keeper of the records of grievances filed by inmates at the Hutchinson Correctional Facility and indicates she found two unnumbered grievances and one numbered grievance BA00018470. (Exhibit 12)

## VIII.   NON-AFFIDAVIT EXHIBITS

Unnumbered Grievance and response received by the Secretary of Corrections designee from Plaintiff on December 22, 2019. (Exhibit 13)

Unnumbered Grievance and response received by the Secretary of Corrections designee from Plaintiff on January 30, 2020. (Exhibit 14)

Grievance BA00018470 received from plaintiff on February 5, 2020. (Exhibit 15)

Internal Management Policy & Procedure 10-109A regarding inmate work assignments. (Exhibit 16)

Hutchinson Correctional Facility General Order 19-101 regarding inmate work programs. (Exhibit 17)

<u>**CONCLUSION**</u>

Plaintiff claims his First Amendment rights were violated because he was fired from his job by defendant Scoggins in retaliation for plaintiff exercising his first amendment rights in complaining about a breakfast sausage.

Plaintiff further claims his First Amendment rights were violated because defendant Lamb did not find him another job quickly enough, which was in retaliation for plaintiff exercising those rights.

Defendant Lamb states he didn't refuse to find another job for plaintiff immediately, but that there weren't sufficient jobs available, particularly if food service related jobs were not possible.  Defendant Lamb also indicates he was on medical leave a portion of the time after plaintiff was removed from his job.

Defendant Scoggin generally denies plaintiff's allegations and indicated that he was trying to incite other inmates to riot or to be disobedient over a cold piece of precooked sausage, which was immediately warmed and returned to him.

Apparently, plaintiff was also difficult to reemploy because he had a number of law library appointments that interfered with the available work schedules.

Other witnesses provide a general framework of events and the timetable of what has occurred.

The facts of what happened are disputed to some degree.

It would appear that the threshold question is whether plaintiff's claims rise to a level that states a violation of the First Amendment.

The answer to that question would greatly assist in determining what facts are agreed to and what material facts, if any, remain in dispute.

Respectfully submitted,

  /s/ Jon D. Graves_____
Jon D. Graves #10554

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: None.   I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

> Kenneth D. Leek #63523
> Hutchinson Correctional Facility
> P.O. Box 1568
> Hutchinson, KS 67504-1568

__ /s/ Jon D. Graves_____ _____<br>Jon D. Graves

## <u>EXHIBIT LIST</u>

1. Inmate Data Summary sheet for Plaintiff Kenneth D. Leek KDOC #63523
2. Letter from Counsel dated July 1, 2020, asking plaintiff for additional statement
3. Correspondence from Plaintiff dated June 2, 2020, regarding additions to petition
4. Affidavit of Markus Dawes
5. Affidavit of Todd Koob
6. Affidavit of Scott Dick
7. Affidavit of Nathan Brown
8. Affidavit of Michael Lamb (with attachments A-J)
9. Affidavit of Linda Scoggin
10. Affidavit of Debra Skalinder
11. Affidavit of Christiana Wise
12. Affidavit of Elizabeth Smith
13. Memorandum Dated December 26, 2019, regarding unnumbered grievance
14. Grievance Response dated January 30, 2020, regarding unnumbered grievance
15. Grievance BA00018470 with response
16. Internal Management Policy and Procedure 10-109A regarding offender work assignments
17. Hutchinson Correctional Facility General Order 19-101 regarding offender work details

I, Jon D. Graves, certify that the attached are true and correct copies of records kept in the normal course of business by the Kansas Department of Corrections and the published Kansas Statutes Annotated, Kansas Administrative Regulations, Kansas Department of Corrections

14

Internal Management Policy and Procedures, and Hutchinson Correctional Facility General Orders


/s/ Jon D. Graves_____                                          _____August 31, 2020__
Jon D. Graves                                                                    Date


        Subscribed and sworn to before me this _31st_ day of August, 2020.


                                       __ /s/ Rhonda K. Severin_____
                                            Notary Public

My Commission Expires:  11-18-2022