**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KENNETH D. LEEK,**

      **Plaintiff,**

      v.                         **CASE NO.  20-3051-SAC**

**LINDA J. SCOGGIN, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action under 42 U.S.C. § 1983.  Although Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas, the events giving rise to his complaint occurred during his incarceration at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").  This matter is before the Court for screening Plaintiff's First Amended Complaint (Doc. 14).

## I.  Nature of the Matter before the Court

Plaintiff alleges that he was terminated from his prison job in retaliation for complaining about food service staff.  Plaintiff alleges that he was employed as a line server in the kitchen at HCF.  On a Saturday morning in October 2019, Plaintiff heard Defendant Scoggin tell Plaintiff's supervisor "if you can't get your workers to work quietly and faster, I'll fire all of them."  Plaintiff alleges that most of the workers on the serving line were African-American and were discussing prison issues that affected them.  Most of them heard Scoggin's comments "and immediately took offense and started verbally complaining about her consistent offensive comments."  (Doc. 14, at 7.)

While the line workers were taking their break, Lt. Dawes came to the kitchen and asked them what was going on when he noticed they were upset.  Plaintiff informed Dawes about

Scoggin's consistent bad attitude and rude comments and informed Dawes that the workers were refusing to serve food unless someone in authority spoke to Scoggin. Dawes then radioed Lt. Koob, who immediately came to the kitchen, talked to Plaintiff and other inmates, and agreed to speak to Scoggin. Koob informed the line workers that Scoggin had been reprimanded and a narrative would be written. Koob asked the workers to go ahead and serve breakfast because Scoggin guaranteed there would be no more issues, and the crew agreed.

Plaintiff alleges that after this incident, he was scheduled for two days off. When he returned to work Tuesday morning, he overheard Scoggin telling the security officer that she did not want Plaintiff in the kitchen because he "went to the captain and told" on her. Plaintiff became irate and began to argue with Scoggin and the officer. The officer instructed Plaintiff to return to his living unit as he was instructed "before he made matters worse." Plaintiff alleges that he "had no choice but to comply." On the way back to his living unit, Plaintiff saw Lt. Koob and told him what had transpired. Koob instructed Plaintiff to take the day off, but to return to work the following day as he would talk to the kitchen officer.

When Plaintiff returned to work, numerous inmates told Plaintiff that Scoggin had been informing kitchen workers that he was a snitch—that he had told on her and got her in trouble. Plaintiff alleges that Scoggin has worked at HCF for over 10 years and is fully aware of what can happen to an inmate that is labeled a snitch.

Plaintiff alleges that another incident occurred in November 2019. Breakfast burritos were being served and Plaintiff told Aramark Supervisor Mr. Smith that there was not enough rice or scrambled eggs left to feed the 50 kitchen workers. Scoggin decided she would serve the workers two sausages and a cup of cereal as substitutes, but she pulled the sausages out of the hot water before they were fully cooked. Inmates began to refuse to eat the uncooked sausages and Plaintiff

went to the security officer, CO1 Dick, and told him what was going on and stated that he wanted to speak with the captain or lieutenant.  Lt. Brown showed up and Plaintiff and another inmate informed him of the situation.  Brown inspected the sausages and told Scoggin they were not edible and informed Plaintiff that more food was being prepared and not to worry about retaliation.

While sitting at the table eating, Plaintiff asked Officer Dick if he could leave early so he could try to see mental health because he was feeling agitated and anxious. Dick said he would call the mental health department to see if it could be arranged.  Before Officer Dick left, Scoggin showed up and instructed him to escort Plaintiff and the other inmate out of the kitchen when they were finished eating because they were fired.  They followed Dick's order to leave the kitchen. On his way back to his living unit, Plaintiff saw Lt. Brown and spoke to him about the situation. Brown advised Plaintiff that he had already received a call from Scoggin and was aware of the situation.

Plaintiff alleges that he was fired without receiving a disciplinary report and had to be seen by mental health for his anger and paranoia.  Plaintiff alleges that he has been "stressed out and concerned" about being assaulted as a result of Scoggin calling him a snitch.

On November 24 and 26, 2019, Plaintiff asked to be placed back in the kitchen or assigned somewhere else.   The responses received from Lamb stated "request noted."  Plaintiff approached Lamb and Brown in the rotunda a few days later, and asked Lamb why he was not being assigned to a job.  Lamb looked at Plaintiff's ID and said "Leek? Oh, you won't be getting a job now or anytime soon."

Plaintiff attempted to informally resolve the issue with his Unit Team Counselor, Robbin L. Hurt.  Hurt had no interest in helping Plaintiff and believed that Scoggin had done nothing wrong in firing Plaintiff.  Hurt asked Plaintiff to explain why he believed he was fired illegally

and to send form-9s to supervisors for whom he would like to work.   Plaintiff alleges that no supervisors responded.   After Plaintiff supplied Hurt case law as his source of authority, she responded that Aramark is a private company and they have the right to refuse to hire Plaintiff. Plaintiff alleges that Hurt's response shows deliberate indifference.

Plaintiff alleges that while Lamb was on vacation, the substitute job coordinator had Plaintiff scheduled for food service clearance and Plaintiff worked in the kitchen on January 25, 2020.  Scoggin did not work that day and Plaintiff finished his shift without incident.  When Scoggin returned the next day and saw Plaintiff, she ordered him to leave the kitchen because she did not want to be in there with him.  Lt. Dawes told Plaintiff to return to work and if Scoggin had a problem with it she should call Dawes.  Plaintiff reported to work and Scoggin again told him to leave.  Scoggin talked to Dawes and then told Plaintiff to return to his living unit and Aramark staff would figure out what to do about the situation.

Plaintiff was then moved to the second shift and he talked to Skalinder about his assignment.  Skalinder stated that she did not have authority to place Plaintiff on first shift because Scoggin did not want him there, and Plaintiff would need talk to the head supervisor Mr. Pantalono about it.  Plaintiff left to report to his shift, but left a few hours later to attend the law library because it was already scheduled prior to him being rehired in the kitchen.

Plaintiff talked to Pantalono about the situation and after leaving his office Plaintiff was approached by two security staff and told the Skalinder instructed them to escort Plaintiff out of the kitchen because his services were no longer required and he was fired.  When Plaintiff asked why he was fired, he was told that he could not work first shift and Plaintiff's callouts conflict with him being there.

Plaintiff alleges that he was fired in retaliation for complaining about Scoggin in violation of his First Amendment rights.  Plaintiff alleges that Scoggin's labeling of Plaintiff as a snitch caused Plaintiff mental anguish in violation of the Eighth Amendment.  Plaintiff alleges that Lamb's refusal to reassign Plaintiff to his prior job or a different job and Hurt's refusal to assist Plaintiff in being reassigned, contributed to the violation of Plaintiff's First Amendment rights. Plaintiff alleges that Skalinder's actions in terminating Plaintiff for his complaints against Scoggin and for going to the law library violated his First Amendment and Sixth Amendment rights.

Plaintiff seeks declaratory relief; injunctive relief in the form of assignment of Plaintiff to a job; compensatory damages for lost income and emotional injury resulting from being called a snitch; punitive damages; and nominal damages.  Plaintiff names as defendants:  Linda J. Scoggin, Aramark Food Service Supervisor at HCF; Michael J. Lamb, Unit Team and Inmate Job Coordinator at HCF; Robbin L. Hurt, Unit Team Counselor at HCF; and Debra Skalinder, Aramark Food Service Supervisor at HCF.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Eighth Amendment

Plaintiff alleges that he was subjected to cruel and unusual punishment by being labeled a snitch.  A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id*.  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).  The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)

(internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.  "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*.  It is not enough to establish that the official should have known of the risk of harm. *Id*.

Although labeling a prisoner as a snitch can constitute deliberate indifference to a substantial risk of serious harm to an inmate in violation of the Eighth Amendment, Plaintiff has not alleged sufficient facts in support of his claim in this case. *See Fisher v. Oklahoma Dep't of Corr.*, 213 F. App'x 704, 708–09 (10th Cir. 2007) ("Plaintiffs' allegations that Mr. Yott read their letters to the other inmates intending that those inmates would injure plaintiffs are conclusory."); *Crawford v. Strode*, No. 08-3183-SAC, 2009 WL 104313, at *3 (D. Kan. Jan. 13, 2009) ("Although the Tenth Circuit Court of Appeals has recognized that '[l]abeling a prisoner a snitch violates a prisoner's constitutional rights under the Eighth Amendment,' *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001), plaintiff's allegations fall short of demonstrating any such

claim").

Plaintiff alleges that Scoggin told other inmates working in the kitchen that Plaintiff reported her to her superiors.  Plaintiff alleged that the other inmates working in the kitchen were just as upset with Scoggin and she had received multiple complaints from inmates.  Plaintiff has not alleged that he suffered any repercussions based on this conversation or that Scoggin made the statement intending other inmates to injure Plaintiff.  Plaintiff's First Amended Complaint does not allege specific facts indicating that Scoggin engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment.

Furthermore, Plaintiff has not alleged that Scoggin's actions caused him to suffer a physical injury. He claims that he suffered "mental anguish." *See Walker v. Young*, 958 F.2d 381 (Table), 1992 WL 49785, at *2 (10th Cir. 1992) (where plaintiff alleged he was threatened and labelled a snitch, court found that although plaintiff characterized those actions as retaliatory, plaintiff did "not assert any harm or injury suffered as a consequence of those retaliatory actions"); *see also* 42 U.S.C. § 1997e(e) (providing in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  Plaintiff should show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim.

## 2. Retaliation

Plaintiff alleges that Defendants retaliated against him for reporting Scoggin to her superiors, by terminating him from his prison employment and refusing to assign him to another job.  "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations

omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment
> rights may be shown by proving the following elements:  (1) that the plaintiff was
> engaged in constitutionally protected activity; (2) that the defendant's actions
> caused the plaintiff to suffer an injury that would chill a person of ordinary firmness
> from continuing to engage in that activity; and (3) that the defendant's adverse
> action was substantially motivated as a response to the plaintiff's exercise of
> constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.  Plaintiff has not alleged that Defendants' response was substantially motivated as a response to Plaintiff's complaints about Scoggins.  Rather, he acknowledges that he "became irate and began to argue with Scoggin and the officer" when Scoggin indicated she did not want to be in the kitchen with Plaintiff.  Plaintiff was later rehired and worked in the kitchen and left early because his shift conflicted with his callout to the library.  Thereafter, he was not able to work a shift that did not conflict with his library time.  Plaintiff has failed to state a claim for retaliation and should show good cause why his claim should not be dismissed.

### 3.  Grievance Procedure

Plaintiff acknowledges that a grievance procedure is in place and that he used it, but he alleges that Defendants did not assist him properly in the grievance process. Plaintiff's claims relate to his dissatisfaction with responses to his grievances.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the failure to respond to grievances are subject to dismissal for failure to state a claim.

### 4.  Due Process

Plaintiff's claims stem from his termination from his prison employment.  He claims that he was terminated without a disciplinary report.  Although Plaintiff has also alleged retaliation, any due process claim based on his termination would be subject to dismissal. *See Milligan v. Archuleta*, 659 F.3d 1294, 1295–96 (10th Cir. 2011) (finding that fact that plaintiff does not have a constitutional right to employment would bar him from succeeding on a procedural due process claim, but it does not foreclose his retaliation claim)  Prisoners do not have a protected interest in

prison employment.  *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding that a prisoner does not have a protected liberty interest in his prison job)); *see also Jenner v. McDaniel*, 123 F. App'x 900, 905 (10th Cir. 2005) (finding plaintiff "does not have a constitutional right to a particular prison job"). Any due process claim stemming from Plaintiff's termination is subject to dismissal.

### 5. Requests for Relief

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Although it is unclear whether any potential claim for property damage could survive § 1997e(e), Kansas prisoners have an adequate state post-deprivation remedy.  *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property); *Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."); *see also Ybanez v. Scott*, 2015 WL 1258290, at *7 (D. Colo. March 17, 2015) (noting that the 10th Circuit does not appear to have addressed the issue of whether 1997e(e) bars an award of compensatory damages for the loss of property, but in *Allen v. Reynolds*, 475 F. App'x 280, 283–84 (10th Cir. 2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA);

*see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (finding in case involving confiscated magazines that inmate did not suffer physical injury in connection with his constitutional claims, and allegation that personal property was lost, confiscated, or damaged does not state a claim where remedy is in state court).

Plaintiffs seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.  Plaintiff's request for punitive damages is subject to dismissal.

Plaintiff's request for injunctive relief is moot.  Plaintiff is no longer confined at the HCF. Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas. Because Plaintiff's request relates solely to alleged wrongdoing on the part of HCF staff and seeks a job assignment at HCF, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot.  Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*.  Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974).  The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at HCF, his claims for injunctive relief are moot and subject to dismissal.

## IV.  Motion for Appointment of Counsel

Plaintiff has filed a Renewed Motion for Appointment of Counsel (Doc. 46), stating that he in unable to afford counsel, the issues are complex, and Plaintiff is now housed at a Long-Term Restrictive Housing Unit without meaningful access to the court.  Plaintiff states that he is exhausting his administrative remedies regarding his access claim and will be filing another complaint with the court after exhaustion.

The Court has considered Plaintiff's renewed motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543,

547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiffs' First Amended Complaint survives screening.

## V.  Response Required

Plaintiff is required to show good cause why his First Amended Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Renewed Motion for Appointment of Counsel (Doc. 46) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **July 16, 2021,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's First Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated June 16, 2021, in Topeka, Kansas.**

<u>**S/ Sam A. Crow**</u>
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**