Mr. Kenneth D. Leek #63523
H.C.F. P.O. Box 2
Lansing, Ks 66043-0002


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


KENNETH D. LEEK,                    )
        Plaintiff,                  )
                                    )
    Vs.                             )   Case No. 20-3051-SAC
                                    )
LINDA SCOGGIN, et al.,              )
        Defendants.                 )


## PLAINTIFF'S RESPONSE TO COURT'S MEMORANDUM AND ORDER


COMES NOW, the plaintiff, Kenneth D. Leek, pro se, and submits this response to the court's memorandum and order to show cause why his First Amended Complaint should not be dismissed for failure to state a claim. In support plaintiff submits as follows:


ACCESS TO THE COURT

This court has ordered plaintiff to show cause why

his complaint should not be dismissed after being advised
he is being held in a new supermax unit that does not provide
him with meaningful access to the court and denying several
requests for the appointment of counsel). The court has
basically ordered plaintiff to participate in a gun fight
with a slingshot. Even so, plaintiff will now attempt
to comply with the court's order with the notes, cases
and limited legal materials he has in his possession.

## EIGHTH AMENDMENT

The court has ordered plaintiff to show cause why his
Eighth Amendment claim that defendant Scoggin called
him a snitch should not be dismissed for failure to state
a claim. The court made the same demand in a prior
order and plaintiff immediately responded to the order.
In order to avoid being redundant plaintiff has attached
his prior response to this motion and incorporates it by
reference as though fully set out herein.

In addition to that stated above the court in
Benefield, supra, also stated the following:

"Therefore, if we accept as true Plaintiff's allega-
tions that Ms. McDowell labeled him a snitch,
that the label was communicated to other inmates,
and that she was aware of the obvious danger
associated with a reputation as a snitch, clearly

(2)

established law provides that Mr. Mc Dowell violated
plaintiff's constitutional rights under the Eighth
Amendment," 241 F.3d at 1271.

Scoggin is guilty of all the above and the clearly
established law in this circuit states plaintiff's consti-
tutional rights under the Eighth Amendment have been
violated. Dismissal of Scoggin from the suit is improper
at this time.

## RETALIATION

The court made the following statement in its order:

"Plaintiff claims of retaliation are subject to dis-
missal for failure to allege adequate facts in support
of his claims. Plaintiff has not alleged that
Defendant's response was substantially motivated
as a response to plaintiff's complaints about Scoggin"
Order at page 10

Plaintiff maintains that he did allege adequate
facts in support of his claims and that Scoggin's
firing of him was solely motivated as a response
to his complaining to security personnel about her
actions.

(3)

The Tenth Circuit has held that:

"Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. <u>Shero V. City of Grove</u>, 510 F.3d 1196, 1203 (10TH Cir. 2007)

## <u>plaintiff was engaged in constitutionally protected activity</u>

As a threshold matter plaintiff's claim hinges on if his complaining to security personnel about Stoggin's actions constitutes "protected activity" pursuant to the First Amendment. Plaintiff asserts that it did. While there is little case law available in regard to a prisoner's oral grievances to prison staff being protected by the First Amendment, <u>Mack V. Loretto</u>, 839 F.3d 286, 297-299 is very pursuasive in this

matter :

"The Petition Clause embraces a broad range of communications, and the availability of its protections have never turned on a perceived distinction between written and oral speech. Both the Free Speech Clause and the Petition Clause protect 'personal expression' — both expression generally and expression directed towards the government for the specific purpose of asking it to right a wrong. The Government concedes that some informal, oral, and even nonverbal expressions of grievances to the government are protected under the Petition Clause. It argues, however, that an oral grievance lodged by a prisoner, in particular, should not be entitled to constitutional protection..... While we appreciate the Government's concerns, we are not persuaded that an oral grievance should not receive constitutional protection solely because it is lodged by a prisoner as opposed to a civilian. In short, mack's oral grievance sufficiently and timely put prison officials on notice that he was seeking redress, was conveyed to prison officials on notice that he was seeking redress, was conveyed to prison officials in a reasonable manner, and concerned conduct that the prison

(5)

itself prohibits. Under the circumstances of this case, these factors lead us to conclude that Mack's oral grievance is entitled to constitutional protection."

Plaintiff's oral grievances against Scoggin sufficiently and timely put prison officials on notice that he was seeking redress, it was relayed to prison officials in a reasonable manner, and it concerned conduct that the prison itself prohibits— unequal treatment of prisoners and the serving of uneatable food. Under the circumstances of this case there can be no doubt plaintiff's oral grievances are entitled to constitutional protection.

## Plaintiff's chilling injury

As a result of plaintiff's complaints to prison officials Scoggin fired him from his line server job. Plaintiff subsequently was unemployed for months and locked in his cell for 22 hours a day. Plaintiff's firing also served as a message to the rest of the inmate workers that standing up for yourself will have severe, swift consequences. Plaintiff also was living off his monthly earnings from his job and has never been given back pay for the months he was unemployed. Those things in combination with Scoggin calling plaintiff a snitch

are injuries that would chill a person of ordinary firmness from continuing to engage in complaining to prison officials. The court in <u>Thomas V. Turner</u>, 1992 U.S. App. LEXIS 32705 (10th Cir, 1992) would agree:

"Thomas further alleged that shortly after he filed the grievance and because of it, Turner fired Thomas from his job as lead man at the prison box factory Turner supervised. Although Thomas alleged he was reinstated in five months, he allegedly was not given back his position as lead man nor did he receive back pay. These allegations, taken as true, create the inference of a constitutional deprivation remediable under section 1983."

## Motivation of Scoggin's adverse actions

There is no doubt that plaintiff was fired and then banned from re-entering the kitchen solely because of his complaint to prison officials about Scoggin's actions. Had plaintiff accepted Scoggin's smart remarks and the uncooked food she was attempting to serve the inmate kitchen workers, he would have likely still been employed in the kitchen until he went to seg-regation or transferred.

Plaintiff clearly has satisfied the elements enumer-
ated in Shere, supra, and his retaliation claims must
proceed.

Additionally, the court made the following statement
in its order:

"[Plaintiff] acknowledges that he 'became irate and
began to argue with Scoggin and the officer' when
Scoggin indicated she did not want to be in the kitchen
with Plaintiff. Plaintiff was later rehired and
worked in the kitchen and left early because his
shift conflicted with his callout in the library.
Thereafter, he was not able to work a shift that
did not conflict with his library time. Plaintiff
has failed to state a claim for retaliation and
should show good cause why his claim should not
be dismissed."

The court's statements are a misstatement of fact
and misleading. The plaintiff clearly alleged facts
that Scoggin's responses to his speaking with security
personnel about her was her motivation for firing
and repeatedly refusing to allow him to enter the
kitchen on multiple occasions. In fact, in para. 18
of the amended complaint plaintiff stated, "after
the incident plaintiff had two scheduled days

off. When he returned to work Tuesday morning he overheard Scoggin tell the security officer he did not want plaintiff in the kitchen because he 'went to the captain and told' on her." In regards to the first termination, plaintiff stated in para. 42, " the following day plaintiff was advised Lt. Brown was told by Scoggin he was fired for complaining to the leutenant about the food and she did not want him or Carter influencing others to do the same."

Plaintiff was not able to work a shift that did not conflict with his law library schedule because defendant Skalinder wouldn't place him on first shift solely on the basis Scoggin told her she didn't want him around her. Plaintiff alleged Skalinder's true reason for firing him was due to her overhearing him complaining to the head supervisor about Scoggin. If the matter came down to a credibility contest a reasonable jury could easily find for the plaintiff.

It's also a well known fact that a prisoner cannot be retaliated against for ~~complaining~~ exercising his right of access to the courts. Plaintiff only had a few library appointments that were scheduled before he was unknowingly placed on second shift. Skalinder was advised prior to plaintiff leaving that he had a law library pass and she was fine with it. There-

fore there was no need to terminate the plaintiff because he left work a little early. The fact of the matter is Skoliner heard plaintiff talking to Pantalono about her friend Scoggin and trying to get back on first shift and she sought to fire him.

## Defendant Hurt's involvement

Plaintiff's claims against Hurt revolve around her direct participation in the alleged violations of Scoggin. As plaintiff's unit team counselor she had a duty and responsibility to have him reassigned to the kitchen or to another job once he was improperly fired. Instead of assisting him she said just because plaintiff had the right of free speech it didn't mean he was free of the consequences of that speech, thus acquiesing in Scoggin's retaliatory actions. Since plaintiff was fired without a disciplinary report she could have had him reassigned or hired on elsewhere with little more than a phone call or e-mail. Instead she chose to do nothing believing the actions of Scoggin were just and proper.

## Defendant Lamb's involvement

Plaintiff's claims against Lamb also revolve around

(10)

his direct participation in the alleged violations of Scoggin.
Lamb was the job coordinator and had a duty and respon-
sibility to have him reassigned to the kitchen or to another
job once he was put on notice plaintiff was fired as an
act of retaliation. Instead of assisting him he did
absolutely nothing. In fact, when plaintiff saw and
spoke to him he advised him he would not be assigned
to a job then or anytime soon. Plaintiff did not get
reassigned to the kitchen until Lamb went on vacation
and his temporary replacement did it. Lamb acquiesed in
Scoggin's retaliatony actions as well. Since plaintiff
was fired without a disciplinary report he could have
reassigned him or had him hired on elsewhere.
Instead he did nothing.

There are numerous cases that support plaintiff's
position that Hurt and Lamb's involvement make them
liable for the constitutional violations. Mc Clary V.
Coughlin, 87 F.Supp. 2d 205, 215 (WDNY 2000) ("Personal
involvement does not hinge on who has the ultimate authority...
Rather, the proper focus is the defendant's direct par-
ticipation in, and connection to, the constitutional
deprivation."); Gregson V. Keme, 891 F.2d 829, 836
(11th Cir. 1990)("... [A] supervisor can be held liable
under section 1983 when a reasonable person in the
supervisor's position would have known that his conduct

infringed the constitutional rights of the plaintiff... and
his conduct was causally related to the constitutional
violation committed by his subordinate...''); Leach V. Shelby
County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989)
(evidence that sheriff ''implicitly authorized, approved or
knowingly acquiesed'' in his subordinates' actions could
support his liability); Walker V. Godinez, 912 F. Supp.
307, 312-313 (N.D. Ill 1993) (holding allegation that
warden and housing unit supervisor were told of staff
misconduct and did nothing could support claim against
them.)

 Hurt and Lamb had direct participation in the violations
against plaintiff and their dismissal from this suit would
be improper at this time.

## Grievance Procedure

 The court states in its order that "plaintiff's claims
relate to his dissatisfaction with responses to his
grievances." That is incorrect. Plaintiff knows he
has no constitutional right to the grievance process,
Plaintiff's claims relate to defendant's refusal to
take any corrective or remedial action once they were
made aware of the violations of Scoggin by Form-9
and in his personal conversations.

## Due Process

Plaintiff has made no claim of a due process violation as the court averred in its order. Plaintiff's firing and refusal to be allowed to work, when he was assigned to, were acts of retaliation. Further, in Willams v. Meese, 926 F.2d 994 (10th Cir. 1991) the court reversed a 12(b)(6) dismissal of a pro se prisoner's claim "that he was denied particular job assignments or transferred from one job to another in retaliation for filing administrative grievances." Id. at 998; Smith v. Maschner, 899 F.2d 940, 947-48 (10th Cir. 1990) (prison officials may not retaliate against inmate for exercising right of access to the courts)

## Punitive Damages

The court states plaintiff has alleged no facts whatsoever that any defendant acted with a sufficiently culpable state of mind. Plaintiff disagrees. Culpable is defined in Black's Law Dictionary as "involving the breach of a duty." That breach of duty is exactly what he has alleged defendants Hurt and Lamb of doing. They both had a duty to take remedial action when Scoggin improperly fired plaintiff yet neither of them did anything. Punitive

(13)

damages are proper.

### CONCLUSION

Plaintiff has alleged facts sufficient to support his claims against the defendants. For that reason his suit must proceed.

Respectfully Submitted,

Kenneth D. Leek

KENNETH D. LEEK

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that he hand delivered the above PLAINTIFF'S RESPONSE TO COURT'S MEMORANDUM AND ORDER to prison officials for e-filing to the United States District Court, District of Kansas, on this 9th day of July, 2021.

Kenneth D. Leek

KENNETH D. LEEK

(14)

Mr. Kenneth D. Leek #63523
H.C.F. P.O. BOX 1568
Hutchinson, KS 67504-1568

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KENNETH D. LEEK,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Case No. 20-3051-SAC** |
| | ) | |
| **LINDA J. SCOGGIN, et al.,** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### PLAINTIFF'S RESPONSE TO COURT'S MEMORANDUM
### AND ORDER TO SHOW CAUSE

COMES NOW, the plaintiff, Kenneth D. Leek, pro se, and submits this response to the court's memorandum and order to show cause why his Eighth Amendment claim in the above-captioned cause should not be dismissed for failure to state a claim.   In support plaintiff maintains as follows:

In plaintiff's complaint he alleged that defendant Scoggin told both inmates and another officer that she did not want him working with the in the kitchen because he snitched on her and got her in trouble.   Other inmates also informed plaintiff that Scoggin had been calling him a snitch.   (See Attached affidavit of Lafayette Washington)   Subsequently plaintiff had to had multiple visits with the mental health staff at the prison to address his paranoia and anger created by the actions of Scoggin.   As of the date of the filing of the complaint plaintiff had yet to be physically harmed due to her actions.

In the Court's order to show cause why the Eighth Amendment claim should not be

dismissed the following statement was made:

"Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation. Scoggin told other inmates that Plaintiff reported her to her superiors. Plaintiff has not alleged that he suffered any reprecussions based on the conversation. Plaintiff's Complaint does not allege specific facts indicating that the defendant official engeged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. Plaintiff should show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim"

In sum, the Court is saying that since plaintiff has not been assaulted as a result of Scoggin calling him a snitch her actions are not violative of the Eighth Amendment. Plaintiff disagrees. This is the precise issue the Court dealt with in our circuit in **Benefield V. McDowall**, 241 F.3d 1267,1272 (10th Cir. 2001):

"In order to satisfy the objective component of an <u>Eighth Amendment</u> violation, an inmate must therefore show "that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer, 511 U.S. at 834</u> (emphasis added).

The Supreme Court has rejected the notion that the <u>Eighth Amendment</u> does not reach official conduct that "is sure or very likely to cause" serious injury at the hands of other inmates. <u>Helling v. McKinney, 509 U.S. 25, 33, 125 L. Ed. 2d 22, 113 S. Ct. 2475 (1993)</u> ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."); accord <u>Ramos v. Lamm, 639 F.2d 559, 572 (10th Cir. 1980)</u> ("An inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates. Moreover, he does not need to wait until he is actually assaulted before obtaining relief.") (citations omitted); <u>Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973)</u> (same). **The government's argument that the mere risk of harm is insufficient to establish the objective component of an <u>Eighth Amendment</u> violation is precisely the position taken by the dissent in Helling v. McKinney. See <u>509 U.S. at 37</u> (Thomas, J., dissenting).**

There is no question that damages are possible where an inmate has been assaulted due to being labeled as a snitch. <u>Northington, 102 F.3d at 1567</u>. The more difficult question is whether damages will lie in the absence of physical injury. Though injunctive relief will surely lie, see <u>Helling, 509 U.S. at 33</u>, **we believe that a violation of the <u>Eighth Amendment</u> does not turn on the type relief sought. 3 Moreover, we are in accord with Justice Blackmun's views in <u>Hudson v. McMillian, 503 U.S. at 16-17</u> (Blackmun, J., concurring in the judgment), that the <u>Eighth Amendment</u> may be implicated not only to physical injury, but also by the infliction of psychological harm. The actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm. At this**

point, construing Plaintiff's pro se pleadings liberally, see <u>Hall v. Bellmon, 935 F.2d 1106,</u> <u>1110 (10th Cir. 1991)</u>, we hold that the district court was correct in finding the Plaintiff's allegations sufficient to survive Ms. McDowall's motion to dismiss based on qualified immunity." See also <u>Burrell v. Hampshire County, 307 F.3d 1, 9 (1st Cir. 2002)</u> (describing situation in <u>Giroux v. Somerset Cty., 178 F.3d 28, 29-30 (1st Cir. 1999)</u>), as endangerment where jail officials appeared to realize that their actions "would tar Giroux as an informant and thereby increase the risk to him; <u>Peters v. Azzara, 2017 U.S. Dist. LEXIS 149307, 2017 WL 4118388, at</u> <u>*5 (D.N.H. Aug. 4, 2017)</u> (labeling an inmate a gang informant within earshot of other gang member inmates could state an <u>Eighth Amendment</u> claim); <u>Flores v. Wall, 2012 U.S. Dist.</u> <u>LEXIS 136668, 2012 WL 4471101, at *12 (D.R.I. Aug. 31, 2012)</u> (spreading rumors that plaintiff was a snitch violates the duty to protect). (Emphasis Added)

After reivew of the above-cited cases there can be no doubt that an official calling an inmate a snitch is violative of the Eighth Amendment's protection agaisnt cruel and unusual punishment.The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that her conduct was unlawful in the situation she confronted. <u>Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001),</u> overruled on other grounds by <u>Pearson, 129 S. Ct. at 818</u>. It was clear to Scoggin, who has been working in prisons for decades, that calling an inmate a snitch to other officers and inmates was unlawful.

WHEREFORE, and because of the above, plaintiff requests this court enter an order stating he has shown cause as to why his Eighth Amendment claim should not be dismissed for failure to state a claim.

Respectfully Submitted,

KENNETH D. LEEK

## CERTIFICATE OF SERVICE

The undersigned hereby certifes that he hand delivered the above **PLAINTIFF'S RESPONSE TO COURT'S MEMORANDUM AND ORDER TO SHOW CAUSE** to prison officials for e-filing to the United States District Court, District of Kansas, on this 31st day of May, 2020.

KENNETH D. LEEK

STATE OF KANSAS )
                            ) ss
COUNTY OF RENO )

## **AFFIDAVIT OF LAFAYETTE WASHINGTON**

The undersigned being of sound mind and body and of lawful age swears under the pains and penalties of perjury that the following is true to the best of his knowledge and bleief:

1. That while working in the kitchen at Hutchinson Correctional Facility I did witness inmate Kenneth Leek have a disagreement with Aramark Supervisor Scoggins over her attempting to serve us cold, unedible sausages for breakfast.

2. That when inmate Leek refused to accept the food numerous inmates, including myself, also refused to accept it.

3. That inmates Leek and Carter demanded security staff to see the captian or leutenant about the food.  The officer called the leutenant.

4. That I witnessed inmates Leek and Carter speak with the leutenant and he went on the serving line and spoke with Ms. Scoggins.  We could hear him directing her to dump the food she had prepared and serve us a proper meal.

5. Eventually Ms. Scoggins prepared some fresh sausages and advised the inmates that didn't receive trays to come get them.

6. When I went to get my sausages I overheard Ms. Scoggins tell another inmate, "I'm only doing this because that inmate Leek went and told on me."

7. It is my opinion that Ms. Scoggins has been working in this prison far too long to not know that she cannot make comments like that to other inmates.  She's well aware of what can happen.

8. That I notified inmate Leek of what I heard.

Further affiant saith not.

_Lafayette Washington_
LAFAYETTE WASHINGTON

SUBSCRIBED AND SWORN to before me on this __9th__ day of ~~November,~~ *DECEMBER* 2019.

SEAL:

NOTARY PUBLIC - State of Kansas
LOREN R. SNEDEKER
My Appt Expires __07-01-23__

NOTARY PUBLIC

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

_LEEK_
Last Name Only

## KANSAS DEPARTMENT OF CORRECTIONS

_63523_
Number

### OFFENDER REQUEST TO STAFF MEMBER

To: _Unit Team Lamb_                    Date: _11/24/19_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I have some mental health issues and I'm struggling with all
the time I'm stuck in my cell. I like to work, I'm eligible to
work, and I need a job, I would prefer to work in the kitchen
or laundry but I do have training and a certificate in HVAC.
Please, help.

Work Assignment: NONE _____   Living Unit Assignment: _____
Comment: _____   Detail or C.H. Officer _____

Disposition: _____
_____
_____
_____

To: _Leek 63523_                         Date: _11/26/19_
(Name & Number)

Disposition: _Request noted._ _____
_____
_____

_M. Lamb/CTS_
Employee's Signature                    **To be returned to offender.**

P-0009

RESOLUTION

LEEK

Last Name Only

NSAS DEPARTMENT OF CORRECTIONS

63523

Number

NDER REQUEST TO STAFF MEMBER

Date: 11/25/19

artment)

the problem on which you desire assistance. (Be specific.)

I was layed in from my job in the
requested to speak to the leutenant about
was being served. Such termination is
unlawful. I'm requesting my job back
newhere immediately.
nks

Living Unit Assignment: C2-106

Detail or C.H. Officer:

Date: 12/4/19

To be returned to offender.

C2-106

RESOLUTION

LEEK
Last Name Only

NSAS DEPARTMENT OF CORRECTIONS

£3523
Number

NDER REQUEST TO STAFF MEMBER

C-2 _____ Date: 1/7/2c

artment)
the problem on which you desire assistance. (Be specific.)

e kitchen was taken because I complained
food. I never received a O.R. I asked
itchen but unit team Lamb refused to reassign
e. These actions are illegal. What am I

Living Unit Assignment: C2-106

Detail or C.H. Officer: Strong csc

s are illegal? Please quote your source so
un claim.

Date: 01/08/2020

n nines requesting employment with
tails you are interested in working for/on. d

r

To be returned to offender.

C2-106

LEEK

_____

Last Name Only

NSAS DEPARTMENT OF CORRECTIONS

63523

Number

NDER REQUEST TO STAFF MEMBER

C2          Date: 1 | 8 | 20

artment)

the problem on which you desire assistance. (Be specific.)

The First Amendment of the U.S.
t 1,000 state and federal cases is my
be fired for using your first amendment
rong.

mb. He refused to give me a job.

_____ Living Unit Assignment: C2 - 106

_____ Detail or C.H. Officer: _____

se you have the right to free speech
u are free of the consequences of that
a private company and if they choose not to
in their right as an employer.

_____          Date: 01/10/2020

D did Mr. Lamb say?

To be returned to offender.