## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KENNETH D. LEEK,**

     **Plaintiff,**

     v.                            CASE NO.  20-3051-SAC

**LINDA J. SCOGGIN, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action under 42 U.S.C. § 1983.  Although Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas, the events giving rise to his complaint occurred during his incarceration at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").  On June 16, 2021, the Court entered a Memorandum and Order (Doc. 47) ("M&O") granting Plaintiff until July 16, 2021, in which to show good cause why his First Amended Complaint (Doc. 14) ("FAC") should not be dismissed for the reasons set forth in the M&O.  This matter is before the Court on Plaintiff's Response (Doc. 48).  Defendants Scoggin and Skalinder have also filed a Reply (Doc. 49).

The Court set forth in detail in the M&O the allegations in Plaintiff's FAC and the Court's screening standards.  The Court found that Plaintiff's FAC was subject to dismissal for failure to state a claim.   In summary, Plaintiff claimed in his FAC that he was terminated from his prison job as a line server in the kitchen at HCF in retaliation for complaining about food service staff; Defendant Hurt's response to Plaintiff's grievance regarding his termination showed deliberate indifference; Defendant Scoggin's labeling of Plaintiff as a snitch caused Plaintiff mental anguish in violation of the Eighth Amendment; Defendant Lamb's refusal to reassign Plaintiff to his prior job or a different job contributed to a violation of Plaintiff's First Amendment rights; and

1

Defendant Skalinder's actions in terminating Plaintiff for his complaints about Scoggin and for going to the law library violated his First and Sixth Amendment rights.

### 1. Eighth Amendment

Plaintiff alleges in his FAC that he was employed at HCF as a line server in the kitchen. In October 2019, inmates working in the kitchen were discussing prison issues that affected them when Defendant Scoggin, an Aramark Food Service Supervisor,  told Plaintiff's supervisor "if you can't get your workers to work quietly and faster, I'll fire all of them." (Doc. 14, at 7.)  Plaintiff alleges that "[m]ost of the inmates present heard Scoggin's comments and immediately took offense and started verbally complaining about her consistent offensive comments." *Id*.  Plaintiff alleges that when Lt. Dawes came to the kitchen shortly after the incident, he noticed the line workers looked upset, so he asked them what was going on.  Plaintiff informed Dawes about Scoggin's consistent bad attitude and rude comments and informed Dawes that the workers were refusing to serve food unless someone in authority spoke to Scoggin.  *Id*.  Dawes then radioed Lt. Koob, who immediately came to the kitchen, talked to Plaintiff and other inmates, and agreed to speak to Scoggin.  Koob informed the line workers that Scoggin had been reprimanded and a narrative would be written.  Koob asked the workers to go ahead and serve breakfast because Scoggin guaranteed there would be no more issues, and the crew agreed.  *Id*.

Plaintiff alleges that after this incident, he was scheduled for two days off.  *Id*.  When he returned to work Tuesday morning, he overheard Scoggin telling the security officer that she did not want Plaintiff in the kitchen because he "went to the captain and told" on her.  *Id*.  Plaintiff states that he "became irate and began to argue with Scoggin and the officer."  *Id*.  The officer instructed Plaintiff to return to his living unit as he was instructed "before he made matters worse."  Plaintiff alleges that he "had no choice but to comply."  *Id*.  On the way back to his living unit,

Plaintiff saw Lt. Koob and told him what had transpired.  Koob instructed Plaintiff to take the day off, but to return to work the following day as he would talk to the kitchen officer.  *Id.*

When Plaintiff returned to work, numerous inmates told Plaintiff that Scoggin had been informing kitchen workers that he was a snitch—that he had told on her and got her in trouble.  *Id.* at 8.  Plaintiff alleges that Scoggin has worked at HCF for over 10 years and is fully aware of what can happen to an inmate that is labeled a snitch.

Plaintiff alleges that about a month later, there was another incident in the kitchen, where Scoggin was attempting to serve the kitchen workers sausages that were not fully cooked.  *Id.* Inmates began to refuse to eat the uncooked sausages and Plaintiff went to the security officer, CO1 Dick, and told him what was going on and stated that he wanted to speak with the captain or lieutenant.  *Id.*   Lt. Brown showed up and Plaintiff and another inmate informed him of the situation.  Brown inspected the sausages and told Scoggin they were not edible and informed Plaintiff that more food was being prepared and not to worry about retaliation.  *Id.*

While sitting at the table eating, Plaintiff asked Officer Dick if he could leave early so he could try to see mental health because he was feeling agitated and anxious.  *Id.* at 9.  Dick said he would call the mental health department to see if it could be arranged.  Before Officer Dick left, Scoggin showed up and instructed him to escort Plaintiff and the other inmate out of the kitchen when they were finished eating because they were fired.  *Id.*  They followed Dick's order to leave the kitchen.  On his way back to his living unit, Plaintiff saw Lt. Brown and spoke to him about the situation.  Brown advised Plaintiff that he had already received a call from Scoggin and was aware of the situation.  *Id.*

Plaintiff alleges that he was fired without receiving a disciplinary report and had to be seen by mental health for his anger and paranoia.  Plaintiff alleges that he was "stressed out and

concerned" about being assaulted as a result of Scoggin calling him a snitch. *Id*.

In his response, Plaintiff attaches his previous response in this case, incorporates his prior arguments, and cites *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001). Plaintiff also attaches an affidavit from another inmate that was working in the kitchen. (Doc. 48, at 18.) That inmate claims that numerous inmates refused to eat the sausages, including him. *Id*. He declares that inmates Leek and Carter complained to the lieutenant and Scoggin was directed to dump the food and prepare a proper meal. *Id*. The inmate declares that "[w]hen [he] went to get [his] sausages [he] overheard Ms. Scoggin[] tell another inmate, 'I'm only doing this because that inmate Leek went and told on me.'" *Id*. Plaintiff also attaches a grievance that he filed stating that he had some mental health issues due to all the time he was spending in his cell. *Id*. at 20. He states in the grievance that he would like to work and "would prefer to work in the kitchen or laundry" but that he also has training and a certificate in HVAC. *Id*.

Plaintiff has failed to show good cause why his Eighth Amendment claim should not be dismissed. The Court found in the M&O that although labeling a prisoner as a snitch can constitute deliberate indifference to a substantial risk of serious harm to an inmate in violation of the Eighth Amendment, Plaintiff has not alleged sufficient facts in support of his claim in this case. *See Fisher v. Oklahoma Dep't of Corr.*, 213 F. App'x 704, 708–09 (10th Cir. 2007) ("Plaintiffs' allegations that Mr. Yott read their letters to the other inmates intending that those inmates would injure plaintiffs are conclusory."); *Crawford v. Strode*, No. 08-3183-SAC, 2009 WL 104313, at *3 (D. Kan. Jan. 13, 2009) ("Although the Tenth Circuit Court of Appeals has recognized that '[l]abeling a prisoner a snitch violates a prisoner's constitutional rights under the Eighth Amendment,' *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001), plaintiff's allegations fall short of demonstrating any such claim").

In *Benefield*, the prisoner alleged that a prison correctional officer had labeled him a snitch to other inmates, conspired to have him attacked or killed by other inmates because of his reputation as a snitch, and filed a false incident report on plaintiff. *Id*. at 1269. The district court found that plaintiff's allegation that the officer "deliberately exposed him to harm at the hands of other inmates by labeling him a snitch stated an Eighth Amendment violation which '[a]t this stage of the proceedings . . . survives [the officer's] assertion of qualified immunity.'" *Id*. at 1270. Plaintiff in that case alleged that the officer put him in danger of attack or even death at the hands of other inmates by circulating rumors that plaintiff was a snitch and by showing other inmates a letter plaintiff allegedly wrote, indicating that he was giving information to the prison investigations staff. *Id*. The Tenth Circuit affirmed, finding that although the plaintiff did not suffer a physical attack, "[t]he Supreme Court has rejected the notion that the Eighth Amendment does not reach official conduct that 'is sure or very likely to cause' serious injury at the hands of other inmates." *Id*. at 1272 (citation omitted). The Tenth Circuit also found that "[t]he more difficult question is whether damages will lie in the absence of physical injury." *Id*. The Tenth Circuit stated that although injunctive relief would surely lie, the government did not argue that damages were barred by 42 U.S.C. § 1997e(e). The Tenth Circuit found that "[T]he actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm." *Id*. In *Benefield*, the Tenth Circuit found that plaintiff's allegations were sufficient to survive the officer's motion to dismiss based on qualified immunity. *Id*.

In *Brown v. Narvais*, the Tenth Circuit addressed a case in which the "conduct and danger complained of [were] materially indistinguishable from that in *Benefield*. 265 F. App'x 734, 736 (10th Cir. 2008) (unpublished). The Tenth Circuit cited *Benefield* for the proposition that although a disclosure has not yet led to an attack on the plaintiff, that fact did not render the pleadings

deficient on the object component of the Eighth Amendment claim—"the existence of a substantial risk of serious harm." *Id*. The Tenth Circuit also cautioned that "[w]e also do not hold that disclosure of this sort always in fact create an actionable danger to the inmate, regardless of circumstances that might materially affect the consequences of the disclosure, such as protective action by prison authorities or other contingencies that could negate the potential danger involved." *Id*.

The facts in the instant case are distinguishable. Here, Plaintiff only alleged that Defendant Scoggin told other inmates working in the kitchen that Plaintiff reported her to her superiors. Plaintiff alleged that the other inmates working in the kitchen were just as upset with Scoggin and that she had received multiple complaints from those inmates. Furthermore, inmates working in the kitchen were present during the incidents in question when Plaintiff complained about Scoggins. Plaintiff has not alleged that he suffered any repercussions from inmates based on Scoggin's statement or that Scoggin made the statement intending other inmates to injure Plaintiff.

Plaintiff's FAC does not allege specific facts indicating that Scoggin engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. Although Plaintiff alleged that Scoggin's statements to the other inmates working in the kitchen caused him mental anguish, Plaintiff sought desperately to get back his old job working with those same inmates in the kitchen. Plaintiff has not shown that Scoggin had a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Plaintiff has not shown that Scoggin was

deliberately indifferent to his safety.

Furthermore, Plaintiff has not alleged that Scoggin's actions caused him to suffer a physical injury.  He claims that he suffered "mental anguish."  *See Walker v. Young*, 958 F.2d 381 (Table), 1992 WL 49785, at *2 (10th Cir. 1992) (where plaintiff alleged he was threatened and labelled a snitch, court found that although plaintiff characterized those actions as retaliatory, plaintiff did "not assert any harm or injury suffered as a consequence of those retaliatory actions"); *see also* 42 U.S.C. § 1997e(e) (providing in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  The Court also found in the M&O that Plaintiff is no longer housed at HCF and his requests for injunctive relief are moot. Plaintiff has failed to show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim.

### 2.  Retaliation

Plaintiff alleges that he was terminated from his prison job in retaliation for complaining about Scoggin.  Plaintiff alleges that on November 24 and 26, 2019, Plaintiff asked to be placed back in the kitchen or assigned somewhere else.  (Doc. 14, at 9–10.)  The responses received from Defendant Lamb, Inmate Job Coordinator at HCF, stated "request noted."  Plaintiff approached Lamb and Brown in the rotunda a few days later, and asked Lamb why he was not being assigned to a job.  Lamb looked at Plaintiff's ID and said "Leek? Oh, you won't be getting a job now or anytime soon."  *Id*. at 10.

Plaintiff attempted to informally resolve the issue with his Unit Team Counselor, Defendant Hurt.  *Id*.  Plaintiff alleges that he spoke with Hurt on numerous occasions in hopes that he would be reassigned to his job.  *Id*.  Hurt had no interest in helping Plaintiff and believed that

Scoggin had done nothing wrong in firing Plaintiff.  Hurt asked Plaintiff to explain why he believed he was fired illegally and to send form-9s to supervisors for whom he would like to work.  *Id*. Plaintiff alleges that no supervisors responded.  After Plaintiff supplied Hurt case law as his source of authority, she responded that Aramark is a private company and they have the right to refuse to hire Plaintiff.  *Id*. at 10–11.  Plaintiff alleges that Hurt's response shows deliberate indifference.

Plaintiff alleges that while Lamb was on vacation, the substitute job coordinator had Plaintiff scheduled for food service clearance and Plaintiff worked in the kitchen on January 25, 2020. *Id*. at 11.  Scoggin did not work that day and Plaintiff finished his shift without incident. When Scoggin returned the next day and saw Plaintiff, she ordered him to leave the kitchen because she did not want to be in there with him.  *Id*.  Lt. Dawes told Plaintiff to return to work and if Scoggin had a problem with it she should call Dawes.  *Id*.  Plaintiff reported to work and Scoggin again told him to leave.  Scoggin talked to Dawes and then told Plaintiff to return to his living unit for the time being and Aramark staff would figure out what to do about the situation. *Id*. at 12.

Plaintiff was then moved to the second shift and he talked to Defendant Skalinder, Aramark Food Service Supervisor, about his assignment.  *Id*.  Plaintiff advised her that he needed to work the first shift due to his personal schedule.  *Id*.  Skalinder stated that she did not have authority to place Plaintiff on first shift because Scoggin did not want him there, and Plaintiff would need talk to the head supervisor Mr. Pantalono about it.  *Id*.  Plaintiff left to report to his shift, but left a few hours later to attend the law library because it was already scheduled prior to him being rehired in the kitchen.  *Id*.

Plaintiff talked to Pantalono about the situation, and after leaving his office Plaintiff was approached by two security staff and told that Skalinder instructed them to escort Plaintiff out of

the kitchen because his services were no longer required and he was fired.  *Id*.  When Plaintiff

asked why he was fired, he was told that he could not work first shift and Plaintiff's callouts

conflict with him being there.  *Id*.

Plaintiff alleges that he was fired in retaliation for complaining about Scoggin in violation

of his First Amendment rights.  Plaintiff alleges that Lamb's refusal to reassign Plaintiff to his

prior job or a different job and Hurt's refusal to assist Plaintiff in being reassigned, contributed to

the violation of Plaintiff's First Amendment rights.  Plaintiff alleges that Skalinder's actions in

terminating Plaintiff for his complaints against Scoggin and for going to the law library violated

his First Amendment and Sixth Amendment rights.

The Court found in the M&O that Plaintiff's claims of retaliation are subject to dismissal

for failure to allege adequate facts in support of the claims.  Plaintiff has not alleged that

Defendants' response was substantially motivated as a response to Plaintiff's complaints about

Scoggins.  Rather, he acknowledges that he "became irate and began to argue with Scoggin and

the officer" when Scoggin indicated she did not want to be in the kitchen with Plaintiff.  Plaintiff

was later rehired and worked in the kitchen and left early because his shift conflicted with his

callout to the library.  Thereafter, he was not able to work a shift that did not conflict with his

library time.  The Court directed Plaintiff to show good cause why his retaliation claim should not

be dismissed.

In his response, Plaintiff alleges that he has alleged adequate facts to show retaliation.

Plaintiff alleges that when he returned to work, he heard Scoggin tell the security officer that she

did not want Plaintiff in the kitchen because he "went to the captain and told on her."  (Doc. 48, at

9.)  Plaintiff further alleges that "in regard to the first termination" he was advised by Lt. Brown

that Scoggin told Brown that Plaintiff was fired for complaining about the food and she did not

want Plaintiff and Carter to influence others to do the same.  *Id.*  However, Plaintiff acknowledges that he returned to work after the two incidents and was assigned to the second shift because Scoggin did not want to work with him on the first shift.  The second shift, however, conflicted with Plaintiff's library time and he acknowledges that he "was not able to work a shift that did not conflict with his law library schedule."  *Id.*

Plaintiff has failed to show good cause why his retaliation claim should not be dismissed for failure to state a claim.

### 3.  Grievance Procedure

Plaintiff acknowledges that a grievance procedure is in place and that he used it, but he alleges that Defendants did not assist him properly in the grievance process. Plaintiff's claims relate to his dissatisfaction with responses to his grievances.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the failure to respond to grievances are dismissed for failure to state a claim.

### 4. Due Process

In the M&O, the Court found that Plaintiff failed to state a due process violation in claiming that he was terminated without a disciplinary report. *See Milligan v. Archuleta*, 659 F.3d 1294, 1295–96 (10th Cir. 2011) (finding that fact that plaintiff does not have a constitutional right to employment would bar him from succeeding on a procedural due process claim, but it does not foreclose his retaliation claim). Prisoners do not have a protected interest in prison employment. *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding that a prisoner does not have a protected liberty interest in his prison job)); *see also Jenner v. McDaniel*, 123 F. App'x 900, 905 (10th Cir. 2005) (finding plaintiff "does not have a constitutional right to a particular prison job"). Plaintiff states in his response that he "has made no claim of a due process violation." (Doc. 48, at 13.)

### 5. Requests for Relief

Plaintiff seeks declaratory relief; injunctive relief in the form of assignment of Plaintiff to a job; compensatory damages for lost income and emotional injury resulting from being called a snitch; punitive damages; and nominal damages.

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Although it is unclear whether any potential claim for property damage could survive § 1997e(e), Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding

Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property); *Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."); *see also Ybanez v. Scott*, 2015 WL 1258290, at *7 (D. Colo. March 17, 2015) (noting that the 10th Circuit does not appear to have addressed the issue of whether 1997e(e) bars an award of compensatory damages for the loss of property, but in *Allen v. Reynolds*, 475 F. App'x 280, 283–84 (10th Cir. 2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (finding in case involving confiscated magazines that inmate did not suffer physical injury in connection with his constitutional claims, and allegation that personal property was lost, confiscated, or damaged does not state a claim where remedy is in state court).

Plaintiffs seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.

Plaintiff's request for injunctive relief is moot. As the Court found in the M&O, Plaintiff is no longer confined at HCF. Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas. Because Plaintiff's request relates solely to alleged wrongdoing on

the part of HCF staff and seeks a job assignment at HCF, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot.

### 6. Court Access

In his response, Plaintiff alleges that he has been denied appointment of counsel and is being held in a new supermax unit that does not provide him with meaningful access to the court. (Doc. 48, at 2.)  As noted by Defendants Scoggin and Skalinder in their reply, Plaintiff raises an issue regarding court access for the first time in his response.  (Doc. 49, at 3.)  Plaintiff did not seek leave of the Court, nor did he obtain consent from the Defendants to amend his pleadings. Plaintiff raised his claims regarding court access in a separate action before this Court.  *See Leek v. Androski*, Case No. 21-3100-SAC.  The Court found in that case that Plaintiff failed to allege facts plausibly showing that the defendants' actions relating to his access to legal resources prejudiced him in pursuing litigation.  *Id*. at Doc. 8.  The Court dismissed Case No. 21-3100, Plaintiff filed a notice of appeal, and the case is currently pending on appeal.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that the Motion to Dismiss (Doc. 34) filed by Defendants Scoggin and Skalinder is **denied as moot.**

**IT IS SO ORDERED**.

**Dated September 20, 2021, in Topeka, Kansas.**

<u>**S/ Sam A. Crow**</u>
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**